IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville June 23, 2020

**STATE OF TENNESSEE v. CURTIS REED HOSENDOVE**

**Appeal from the Criminal Court for Davidson County**
**No. 2019-B-1002    Angelita Blackshear Dalton, Judge**

_____

**No.  M2019-01610-CCA-R3-CD**
_____

The Defendant, Curtis Reed Hosendove, pleaded guilty as a Range II, multiple offender to making a false report, a Class D felony.  *See* T.C.A. § 39-16-502 (2018).  Pursuant to a plea agreement, the Defendant received a four-year sentence, and the trial court was to determine the manner of service.  The trial court ordered the Defendant to serve his sentence in confinement.  On appeal, the Defendant contends that the court committed reversible error by receiving evidence in the form victim impact statements.  Although we conclude that the victim impact statements were irrelevant to the Defendant's conviction for making false report, the error was harmless.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jay Umerley (on appeal) and Mark Peckham (at sentencing), Nashville, Tennessee, for the appellant, Curtis Reed Hosendove.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This cases arises from a May 26, 2018 motor vehicle crash, in which the Defendant's vehicle struck a motorcycle being driven by Royce Porter, who died four days after the crash as a result of his injuries.  The police investigation showed that the Defendant failed to yield and caused the crash.  Although the Defendant was not indicted with criminal offenses related to the traffic crash and to Mr. Porter's death, the Defendant was indicted for driving while his license was revoked and two counts of making a false report to the

police in connection with the crash. The Defendant pleaded guilty to one count of making a false report, and the remaining counts in the indictment were dismissed pursuant to the plea agreement. The guilty plea transcript is not included in the appellate record.

At the August 30, 2019 sentencing hearing, the presentence report was received as an exhibit. The report reflects that the thirty-five-year-old Defendant had previous convictions for two counts of driving while his license was revoked, unlawful possession of drug paraphernalia, two counts of evading arrest, possession of cocaine, assault, unlawful possession of a weapon, and felony theft. The report likewise reflects that after the indictment was returned in the present case, the Defendant was arrested and later convicted of driving under the influence, criminal trespass, misdemeanor drug possession, false imprisonment, and reckless endangerment. Six days before the present offense, the Defendant was arrested and later convicted of domestic assault, for which he received probation. The Defendant's probation for domestic assault was revoked at a revocation hearing held immediately before the sentencing hearing in the present case on the grounds that the Defendant had been arrested and convicted of misdemeanor drug possession and driving under the influence. The Defendant was likewise serving a sentence on probation at the time he committed domestic assault.

The presentence report reflects that law enforcement had suspected the Defendant was a member of Gangster Disciples and that the Defendant reported having been a previous member of the gang. The report reflects that the Defendant completed the tenth grade, that he left school for "disciplinary reasons," and that he attempted unsuccessfully to obtain his GED. The Defendant reported first drinking alcohol, using marijuana, and using cocaine at age eighteen, and he reported last using each in June 2019. The Defendant reported first taking "pills" at age eighteen, taking them twice per week, and last taking them in June 2019. The Defendant denied having been treated for substance abuse. He reported previous mental health diagnoses of schizophrenia, bipolar disorder, and manic depression. He reported excellent physical health. The Defendant had two sons, who were ages five and seventeen. The Defendant reported employment from 2014 to 2019. The Strong-R assessment reflects that the Defendant had a high score for violence.

Regarding the circumstances of the offense, the presentence report reflects that on May 26, 2018, at 12:36 p.m., officers responded to the scene of the crash. Mr. Porter's motorcycle sustained "heavy left side center damage," and Mr. Porter was transported to the hospital and died four days later. The Defendant's Chevrolet sustained right-side, front-end damage. The investigating officers determined that the motorcycle traveled northbound in the right turn lane, and the Defendant's vehicle traveled in the left turn lane. The Defendant's vehicle struck the motorcycle when the motorcycle was in the motorcycle's lane of travel. On July 3, 2018, the crash investigator spoke with the Defendant and the passenger inside the Defendant's vehicle, and the passenger reported having never seen the motorcycle before the crash. The Defendant told the investigator that "as he made his turn, the motorcycle drove around a stopped . . . city bus and he never saw [the motorcycle] before the crash." The investigator attempted to obtain video

surveillance from the Metropolitan Transit Authority from the scene, but on July 12, 2018, he learned that a city bus was not at the intersection at the time of the crash and that, as a result, no video recording was available. However, video surveillance from a camera located at a nearby Kroger's showed that a city bus was not stopped loading and unloading passengers at the time of the crash. The recording showed that the motorcycle drove at a "normal" speed when the Defendant's vehicle "turned into" the motorcycle's lane of travel, causing the crash. On July 12, 2018, the investigator spoke to the Defendant, who again described the "incident with the city bus." The investigator spoke to a witness, James Gable, who stated that he drove his vehicle behind the motorcycle at twenty-five miles per hour and that he did not see a city bus at the time of the crash. The investigator determined that the Defendant failed to yield to the motorcycle, failed to exercise due care, and caused the crash resulting in Mr. Porter's death.

Certified copies of the Defendant's previous convictions, along with criminal history information from the Metropolitan Nashville Police Department and the Tennessee Department of Safety, were received as exhibits. The records reflect, in relevant part, that on May 20, 2018, the Defendant committed domestic assault resulting in bodily injury and that he pleaded guilty and received probation on March 20, 2019. The Defendant's probation was revoked based upon two misdemeanor drug-related convictions stemming from a July 7, 2019 arrest. Likewise, the Defendant received probation for the false imprisonment and reckless endangerment convictions, and his probation was revoked twice.

Jeanette Porter, Mr. Porter's daughter-in-law, read a prepared statement to the trial court. Upon learning of the crash, she and her husband went to the hospital and found Mr. Porter asking if she and her husband were okay, although Mr. Porter had difficulty breathing because of a broken spine and ribs. She said that this was one of their last conversations. She described Mr. Porter as someone who loved his family and gave to others. She said she could not articulate the impact of losing Mr. Porter because of the "selfish choices that others make." She said that everyone thought Mr. Porter would survive his injuries. She said, "He didn't [survive] and that was by a choice someone made. It was negligence."

Randy Porter, Mr. Porter's son, read a prepared statement to the trial court. He stated that "a very negligent individual took" his father and best friend. He described his close relationship with his father and the impact of his father's death. He learned after the crash that his father had frequently donated to St. Jude's Children's Hospital and to other charitable organizations. Mr. Porter said that the crash was not caused by "a law respecting driver [who] made a mistake." He described his father's "perfect driving record" and said the Defendant "made a willful choice." Mr. Porter noted that the Defendant's driving privileges had been revoked, that the Defendant should not have been driving on the day of the crash, and that his father would have been alive if the Defendant had not been driving and had not failed to yield.

-3-

The Defendant testified that he was not intoxicated at the time of the traffic crash and that he attempted to merge left in order to turn left at the intersection. He said that he was traveling to his cousin's home. The Defendant said that he did not see anyone in the "last lane." The Defendant said that Mr. Porter was speeding and "blindsided" the Defendant. He said that he saw

> the people who was letting me turn left they stopped and then the next, the left, in next lane they stopped, so then it leaves me just a bicycle lane so as I turn left [Mr. Porter] hits me.
>
> Now, I do, will admit as I seen him he tried to speed up and beat me to turning left, but he, it was no success, when he really, with all due respect I feel like he probably just should have [gone] behind me instead of going in front of me. That is really what happened and I understand that you don't want to hear that but that is what happened.

The Defendant testified that the traffic crash was an accident and that he wished it had been him who was injured. He said that he stood with and talked to Mr. Porter at the scene. The Defendant recalled Mr. Porter said that "everything was okay." The Defendant said that he "felt bad" about the crash, that he prayed daily about it, and that he had children to support.

The trial court ordered the Defendant to serve his sentence in confinement. The court found that confinement was necessary to protect society by restraining the Defendant, who had a long history of criminal conduct. The court was concerned that after the Defendant was released on bond in this case, he continued to "pick up cases," including a conviction for driving under the influence. The court, likewise, found that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrence to others likely to commit similar offenses. The court found that the circumstances involved making a false report about an offense in which Mr. Porter died. The court reviewed the facts of the offense as stated in the presentence report, finding that the Defendant's dishonesty about the crash that resulted in a death was unacceptable and was "directly" related to the seriousness of the offense. The court stated that lying to a police officer who is investigating a traffic crash was an "extremely serious" offense.

The trial court found that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. The court found, based upon the presentence report and the exhibits, that the Defendant had violated probation "countless" times. The court stated that in some instances the Defendant had violated his probation, had been reinstated to probation, and had violated probation again. The court found that the Defendant had a history of violating probation.

The trial court ordered the Defendant to serve his four-year sentence consecutively to the sentence imposed in the domestic assault case. This appeal followed.

As a preliminary matter, we note that although the guilty plea transcript is not included in the appellate record, the record is sufficient for a meaningful review of the issue presented. *See State v. Caudle*, 388 S.W.3d 273, 2779 (Tenn. 2012) (holding that when a guilty plea transcript is not present in the appellate record, this court should "determine on a case-by-case basis whether the record is sufficient for a meaningful review under the standard adopted in [*State v. Bise*, 380 S.W.3d 682 (Tenn. 2012)]"). The testimony and the exhibits received as evidence at the sentencing hearing provided sufficient factual evidence surrounding the offense.

The Defendant contends that the trial court erred by receiving evidence in the form of victim impact statements from Mr. Porter's son and daughter-in-law because the evidence was not relevant to the conviction offense of making a false report. He requests that this case be remanded to the trial court for a new sentencing hearing. The State responds that the court did not abuse its discretion by receiving and considering the evidence.

Before the victim impact evidence was presented to the trial court, the Defendant objected to Mr. Porter's son and daughter-in-law reading their prepared victim impact statements in connection with Mr. Porter's death. The defense argued that the conviction offense was making a false report to police officers investigating the traffic crash and that, as a result, victim impact evidence was inappropriate. The defense argued that testimony from the police officers investigating the crash regarding the lost "man hours or the effect on the investigation" was relevant to sentencing. The prosecutor stated that the Defendant lied about how the traffic crash occurred, and the court determined that the victim impact statements were "appropriate" evidence for the court's consideration.

At the conclusion of the victim impact evidence, the defense requested that the trial court "set aside the statement[s]." The defense expressed sympathy for Mr. Porter's family but argued that the evidence was not probative of the conviction offense of making a false report. The defense argued that although the evidence would have been relevant to convictions for driving while a license was revoked, failure to yield resulting in a death, and reckless or negligent homicide, the Defendant had not been convicted of these offenses. The prosecutor responded that it had the responsibility to present evidence of the "incident itself." The prosecutor stated, "It's not a charge that comes just out of the blue, it comes from a specific incident with specific people and that is what the State tried to put in front of the Court." The trial court stated that it did not consider "evidence in a vacuum," that the "circumstances surrounding" the Defendant's making a false statement involved a traffic crash resulting in a death, and that the victim impact evidence related to the death and to the Defendant's conduct "as it relates to the conviction offense." The court denied the motion.

Evidence is relevant and generally admissible when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401, 402. Questions regarding the admissibility and relevance of evidence generally lie within the discretion of the trial court, and the appellate courts will not "interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a conclusion that is "illogical or unreasonable and causes an injustice to the party complaining." *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006).

The offense of making a false report is an offense against the administration of justice. *See* T.C.A. §§ 39-16-101 (2018), 39-16-502. It is a crime, in relevant part, "for any person to [i]nitiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern knowing that . . . [t]he information relating to the offense reported is false[.]" *Id*. § 39-16-502(a)(1)(C). A statement is defined as "any representation of fact." *Id.* § 39-16-501(2) (2018). The statute "encompasses not only reports volunteered or initiated by individuals to law enforcement . . . , but also false statements made in response to 'a legitimate inquiry' by a law enforcement officer." *State v. Walter Lee Hicks, Jr.*, No. M2013-01410-CCA-R3-CD, 2014 WL 2902277, at *7 n.3 (Tenn. Crim. App. June 26, 2014), *perm. app. denied* (Tenn. Oct. 22, 2014).

The record reflects that the Defendant was indicted for driving while his license was suspended and two counts of making a false report in connection with how the traffic crash occurred. The Defendant pleaded guilty to one count of making a false report, and the remaining counts of the indictment were dismissed. Although the trial court stated that it did not consider "evidence in a vacuum," the court found that the Defendant's making a false statement involved a motor vehicle crash resulting in a death and that the victim impact statements related to the conviction offense. However, the record does not reflect that Mr. Porter was a victim of the conviction offense of making a false report. Mr. Porter's injuries did not result from the Defendant's false statement to the fatal crash investigator. *See* T.C.A. §§ 40-38-203(1) (2018), 40-38-203(2) (2018), 40-38-103(a)(2) (2018), 40-35-209(b) (2018); *see also State v. Ring*, 56 S.W.3d 577 (Tenn. Crim. App. 2001). Mr. Porter suffered harm as a result of the Defendant's failure to yield based upon the crash investigator's conclusions, which the parties do not dispute. The evidence shows that the Defendant made the false report more than one month after the crash and after Mr. Porter's death. The only basis for the Defendant's false report conviction was that he falsely told the crash investigator that he did not see the motorcycle because "the motorcycle drove around a city bus," which the Defendant said had been stopped along the street. The Defendant was not charged with criminal wrongdoing in connection with causing the crash or causing Mr. Porter's death. The Defendant's criminal conduct in this case was limited to his false statement to the investigating officer about the presence of a city bus as a

contributing factor in the crash. Mr. Porter's death from a motor vehicle crash is tragic. However, the victim impact statements were not relevant to the conviction offense. As a result, we conclude that the trial court abused its discretion by admitting and considering the victim impact statements in determining the manner of service of the Defendant's sentence for making a false report.

However, we likewise conclude that the error was harmless because the record supports the trial court's ordering the Defendant to serve his four-year sentence in confinement based upon his long history of criminal conduct and upon his failed attempts at probation in other cases. *See* T.C.A. § 40-35-103(1)(A), (C) (2018). The record reflects that the Defendant has previous convictions for two counts of driving while his license was revoked, unlawful possession of drug paraphernalia, two counts of evading arrest, possession of cocaine, assault, unlawful possession of a weapon, and felony theft. After the indictment was returned in the present case, the Defendant committed and was later convicted of driving under the influence, criminal trespass, misdemeanor drug possession, false imprisonment, and reckless endangerment.

Likewise, the record reflects that six days before the traffic crash, the Defendant was charged with domestic assault resulting in bodily injury and later received probation in March 2019. We note that the Defendant was serving a sentence on probation at the time he committed domestic assault. The Defendant violated the conditions of his probation for domestic assault by further engaging in criminal conduct in July 2019, which resulted in additional drug- and alcohol-related convictions, and his probation was revoked before the sentencing hearing in this case. Furthermore, after the Defendant was indicted in this case, he was convicted of false imprisonment and reckless endangerment, received probation, and violated the conditions of his release twice.

The record supports that trial court's determinations that confinement is necessary to protect society by restraining the Defendant who has a long history of criminal conduct and that confinement is necessary because measures less restrictive than confinement have frequently and recently been applied unsuccessfully to the Defendant. *See id.* The Defendant failed to establish that he was a favorable candidate for an alternative sentence. As a result, the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE